STATE OF NORTH CAROLINA v. JOSEPH CLIFTON TAYLOR

No. 232A83

(Filed 5 June 1984)

1. **Indictment and Warrant § 7.1— inherent authority of trial judge to reopen court prior to final adjournment**

   Prior to *final adjournment* of a term of court, the trial judge has the inherent authority to reopen court following a recess or adjournment without the assistance of the sheriff. Therefore, defendant's position that the indictment in this case was not returned in open court because the sheriff failed to recite "Oyez, Oyez, Oyez," to announce that court was formally open was without merit where court recessed, the grand jury completed its work shortly thereafter, and the trial judge went back to the courtroom to accept the indictments.

2. **Bills of Discovery § 6— denial of motion for sanctions as a result of State's failure to comply with discovery—no error**

   The trial court did not err in refusing to exclude certain photographs as a sanction for the State's failure to comply with discovery where the district attorney learned of the photographs and a clump of hair found at the crime scene after jury selection began, defense counsel was given the opportunity to examine the photographs prior to the opening of court the following day, and the court properly exercised its discretion in admitting the photographs and excluding evidence of the clump of hair. G.S. 15A-910.

APPEAL by defendant from *Beaty, Judge,* at the 10 January 1983 Session of CASWELL County Superior Court.

Defendant was tried upon a bill of indictment charging him with first-degree murder. He entered a plea of not guilty to the offense charged.

Given the nature of defendant's contentions, an extensive statement of the evidence presented at trial is unnecessary. Those facts pertinent to the issues presented by this appeal will be hereinafter set forth in this opinion.

The jury returned a verdict of guilty of first-degree murder. The State stipulated that the evidence presented at trial did not support the existence of aggravating factors sufficient to justify consideration of the death penalty as an appropriate punishment. Thus, the trial judge imposed a sentence of life imprisonment.

Defendant appealed directly to this Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Charles H. Hobgood, Associate Attorney, for the State.*

*Mark Galloway and W. Osmond Smith, P.C., for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant contends the trial court erred in failing to grant his motion to dismiss the indictment on the ground that it was not returned in open court.

General Statute 15A-628(c) provides, in pertinent part, that "[b]ills of indictment submitted by the prosecutor to the grand jury, whether found to be true bills or not, must be returned by the foreman of the grand jury to the presiding judge in open court."

Defendant takes the position that the indictment was not here returned in open court because the sheriff failed to recite "Oyez, Oyez, Oyez," to announce that court was formally open.

At the hearing on defendant's motion to dismiss the indictment, the foreman of the grand jury, Charles Crisp, testified that the grand jury completed its work shortly after 5:00 p.m. on 27 September 1982 and that he went into the courtroom to look for the judge. Crisp was informed that the judge was in his chambers and he therefore took the bills of indictment to him there.

Crisp's testimony was that

he [Judge Lupton] said he couldn't accept them unless it was in open court. So he said, "Go back to the courtroom, I'll be there in a little bit." So we came back to the courtroom and waited and he came in and reopened court, and I approached the bench and handed him the bills of indictment. And then it was—he told me that I'd have to go back to the grand jury room with the bills of indictment, inform the grand jury what had taken place; and then I brought the bills of indictment back and presented them to him and he took them and that was it.

Connie Stedman, Assistant Clerk of Superior Court for Caswell County, testified that she served as recording clerk on 27 September 1982. She stated that 27 September was the first day of a criminal session and that court recessed that day around 5:00 p.m. She made an entry in the court minutes as follows: "Court takes a recess until 9:30 a.m., 9-28-1982." Court had not adjourned for the week.

Mrs. Stedman was later called back into the courtroom and she noted in the record that "Charles Crisp, Foreman of the Grand Jury, returned bills of indictment. Court reopens."

After hearing this evidence, the trial judge apparently denied defendant's motion to dismiss the indictment, although the record does not reflect his ruling. Furthermore, the judge did not make findings of fact, but since there was no conflict in the evidence, this failure does not constitute prejudicial error. *State v. Richardson*, 295 N.C. 309, 245 S.E. 2d 754 (1978).

We are of the opinion that defendant's hypertechnical argument that court was not reopened because the sheriff failed to recite the familiar litany, "Oyez, Oyez, Oyez," to formally declare the opening of court is without merit.

It has long been held that a term of court remains open until final adjournment. In *State v. Martin*, 24 N.C. 101 (1841), this Court explained that:

The term of a court is in legal contemplation as one day; and although it may be open many days, all its acts refer to its commencement, with the particular exceptions in which the law may direct certain acts to be done on certain other days. It is seldom necessary that the day of any proceeding should appear in making up the record, distinct from that of the beginning of each term, although a minute may be kept of each day's doings. Nor is it necessary that there should be adjournments from day to day, after the term is once opened by the judge; nor, if there should be, that they should be recorded, in order to preserve the authority of the court to perform its functions. The court may, in fact, not adjourn during the whole term, but be always open; though, for the convenience of suitors, an hour of a particular day, or of the next day, may be given them for their attendance. If the

> record states the time of doing an act, as the statement is unnecessary, so it is harmless surplusage, unless the day be beyond the period to which the term legally extends.

*Id.* at 122.

Furthermore, there are numerous cases in this jurisdiction which stand for the proposition that the trial judge has the inherent authority to control trial proceedings and to extend a term of court if, in his discretion, it is necessary for the prompt and efficient administration of justice. *See* McIntosh, North Carolina Practice and Procedure § 103 (2d ed. 1956) and cases cited therein.

Since the trial court has the inherent authority to control trial proceedings and to extend the term, it logically follows that he also has the authority to himself reopen court. We agree with the State that:

> It would serve no useful purpose and impose a needless technicality to hold that court cannot be opened without a Sheriff formally announcing that court is open. A Sheriff or bailiff is present in court to assist the judge as a public crier and to keep order, which he does at the direction of the judge. There is no reason why the judge, if necessary, cannot himself do that which he directs the Sheriff to do.

State's Brief at 5-6.

We hold that prior to *final adjournment* of a term of court, the trial judge has the inherent authority to reopen court following a recess or adjournment without the assistance of the sheriff. Therefore, the indictment in instant case was returned in open court as required by G.S. 15A-628(c) and the trial court correctly denied defendant's motion to dismiss.

[2] Defendant next contends the trial court erred in ruling on defendant's motion for sanctions made as a result of the State's failure to comply with discovery.

The facts necessary for an adequate understanding of this assignment of error are as follows:

Judge Robert A. Collier entered a pretrial order on 15 December 1982 requiring the State to provide defendant with all

discovery to which he was statutorily entitled. On 10 January 1983, the district attorney inquired of defense counsel as to whether the State had complied with all of defendant's requests for discovery. Counsel for defendant at that time indicated that each of defendant's discovery requests had been fulfilled.

This case came on for trial on 10 January 1983. Jury selection began at 2:00 p.m. During a recess at approximately 3:30 p.m., the district attorney was informed of the existence of photographs of the crime scene and physical evidence consisting of a clump of hair located near the body of the deceased. Apparently, the district attorney was surprised to discover this evidence because police officers had earlier told him that there were no photographs or physical evidence. Defense counsel was informed of the existence of this evidence before the jury was impaneled and on Tuesday, January 11, was given an opportunity to examine the photographs prior to the opening of court. When court convened at 9:30 a.m., defendant moved that the photographs and physical evidence be excluded.

Judge Beaty made findings of fact to the effect that defendant had made a timely motion for discovery which had been granted; that prior to the impaneling of the jury, defendant was aware of the existence of the evidence; and that on 11 January, the State made the photographs and physical evidence available to defendant. Judge Beaty then ruled that:

Pursuant to 15A, Section 910, the Court will give the defendant an opportunity to examine the photographs of the crime scene; however, the Court will prohibit the State from introducing those photographs that indicate a clump of hair as presented by the State to the Court; and further, the Court will prohibit the State from introducing and using as a part of this case any physical evidence of any clumps of hair which it may have discovered and did discover on this date, January 11, 1983.

I'm allowing the State to use all photographs except the one indicating the clump of hair and prohibiting the State from producing the clump of hair. All other photographs may be introduced by the State once the defendant has had an opportunity to examine them.

While defendant's position on this issue is not entirely clear, it seems that he is objecting to the trial court's failure to impose a stricter sanction upon the State for its failure to comply with the pretrial discovery order issued by Judge Collier.

General Statute 15A-910 provides that upon failure of a party to comply with an order pursuant to Article 48 (Discovery in the Superior Court), the trial court, in addition to exercising its contempt powers, may

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(3a) Declare a mistrial, or

(3b) Dismiss the charge, with or without prejudice, or

(4) Enter other appropriate orders.

We have held that while the statute provides for several possible curative actions, the trial court is not required to impose any sanctions. *State v. Alston,* 307 N.C. 321, 298 S.E. 2d 631 (1983). "Which sanction, if any, is the appropriate response to a party's failure to comply with a discovery order is entirely within the sound discretion of the trial court. The decision of the trial court will not be reversed absent a showing of abuse of that discretion." *Id.* at 330, 298 S.E. 2d at 639. *See also, State v. Detter,* 298 N.C. 604, 260 S.E. 2d 567 (1979); *State v. Jones,* 295 N.C. 345, 245 S.E. 2d 711 (1978); *State v. Thomas,* 291 N.C. 687, 231 S.E. 2d 585 (1977).

Our review of the record in instant case reveals that the trial judge properly exercised his discretion in permitting the State to introduce into evidence certain photographs and in refusing to admit either photographic or physical evidence of the clump of hair.

We further note that the State fully complied with the trial court's order.

Only one photograph was admitted into evidence. This single photo was a picture of the decedent which was taken at the hospital and it was properly admitted for the purpose of illustrating

testimony of witnesses who described the victim's body and wounds. No photographs depicting the clump of hair were admitted and the clump of hair itself was not exhibited to the jury. Although testimony was given by witnesses that a clump of hair was seen near the victim's car, testimony of witnesses describing what they saw did not violate the trial court's order. Furthermore, defendant did not object to this testimony at trial and therefore may not rely on its admission as a basis for error on appeal. *See* Brandis on North Carolina Evidence § 27 (2d rev. ed. 1982) and cases cited therein.

We hold that defendant received a fair trial, free from prejudicial error.

No error.