NANCY CULLEN, AND DOUGLAS CULLEN, CO-ADMINISTRATORS OF THE ESTATE OF CAMERON PATRICK CULLEN, PLAINTIFF-APPELLANTS V. CAROLINA HEALTH-CARE SYSTEMS, FORMERLY KNOWN AS THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY; THE WILLOWS AT AMETHYST, A FACILITY OF CAROLINA HEALTHCARE SYSTEMS; AND DR. JAMES E. LEE, DEFENDANT-APPELLEES

No. COA99-671

(Filed 1 February 2000)

**Civil Procedure— voluntary dismissal—taxing of costs**

In a case where the parties were initially told by one judge that their medical malpractice case would be continued based on the misplacement of the court file and the estimated lengthy trial time requiring a special session, but later that same day were told

CULLEN v. CAROLINA HEALTHCARE SYS.

[136 N.C. App. 480 (2000)]

by a second judge the case would be tried since changed circumstances revealed the court file was located and a special superior court judge was available, the trial court did not err in ruling that plaintiffs' conditional voluntary dismissal constituted a voluntary dismissal under N.C.G.S. § 1A-1, Rule 41(a)(1), in dismissing the action, and in taxing costs of $23,431.59 against plaintiffs pursuant to Rule 41(d).

Appeal by plaintiffs from order taxing costs entered 8 March 1999 by Judge L. Oliver Noble, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 January 2000.

On 3 June 1997, plaintiffs filed this medical malpractice action to recover money damages from defendants arising out of the death of their son while in the care of the defendants. The matter came on for trial on 11 January 1999 in Mecklenburg County Superior Court before Judge Loto Caviness. Judge Caviness informed the parties that the file could not be located, and also announced that "in view of the estimated trial time on this [case] which is ten to twelve days and no file to start with, with a file to locate, it would seem that this one perhaps should be recommended to a special setting." Counsel advised the trial court that the estimated trial time was probably a month or more, and Judge Caviness stated that it appeared "this one will need to go over." Counsel for plaintiffs objected that counsel was from Fayetteville, had been in Mecklenburg County since the previous Friday, and was prepared for trial. The trial court expressed regret over the situation, again commented to the clerk that a special session would need to be scheduled, and again noted that the estimated time of trial was about one month.

Later that same day, counsel for all parties appeared before Judge Beverly Beal, and Judge Beal advised counsel that although "[a]s a result of a decision made earlier today you all thought you were going to be down this week for this case[,] [a]s a result of administrative decision-making the opportunity is present for the trial of the case and the resources of the Court are at your disposal to get the case tried." Judge Beal then advised the parties that Special Superior Court Judge Charles Lamm was available to try the case. Counsel for plaintiffs informed Judge Beal that he had released his clients and witnesses and was not prepared to go forward. Judge Beal advised counsel for plaintiffs that he should take the matter up with Judge Lamm. When Judge Lamm arrived in the courtroom, counsel for plaintiffs had the following colloquy with the judge:

CULLEN v. CAROLINA HEALTHCARE SYS.

[136 N.C. App. 480 (2000)]

THE COURT: In talking with Judge Beal I understand that you may have had some problem, Mr. Byrd, about releasing your clients?

MR. BYRD: Yes, sir.

When the Court this morning ordered that the case go over I took my clients back and explained that to them and let them go; started to release witnesses.

Released my rooms at the hotel, and I'm not in a position to go forward.

[THE COURT] Well, are your clients local?

MR. BYRD: They are.

THE COURT: What witnesses did you release?

MR. BYRD: I released two police officers who were standing here at the time.

THE COURT: Local police officer?

MR. BYRD: Yes, sir. Yes, sir.

THE COURT: Well, I think you—have you made any attempt to see whether or not you can get your room back for tonight?

MR. BYRD: I have not.

THE COURT: Why don't you do that and also notify your clients to see if you can be back in the morning, assuming this is agreeable with defense counsel, and I'll hear you all if you want to hear anything.

I understand that things may have been a little bit disjointed over here in the Civil Courts Building this morning.

And I'm sure we can make whatever arrangements are necessary to have the police officers back.

So if you want to take a few minutes now and see if you can reinstate your room and contact your clients and then we can do what we need to do in the way of pretrial motions, any pretrial conferences, or anything this afternoon and plan on picking the jury in the morning.

CULLEN v. CAROLINA HEALTHCARE SYS.

[136 N.C. App. 480 (2000)]

MR. BYRD: Your Honor, my position is that the case was ordered continued this morning, and I have acted accordingly, and that it is no longer on will [*sic*] calendar.

\* \* \* \*

THE COURT: As it stands right now the case is still on the calendar and we would like to begin jury selection in the morning.

So let's go ahead and take the time you need this afternoon to see if you can get your clients back.

If you need help through the Sheriff's Department to locate the police officers witnesses and have them to be available tomorrow, whenever you need them, and see if you can get your hotel accommodations back or some hotel accommodations so that we can go forward in the morning.

So we will take a twenty minute recess at this time. If you need more time let me know.

Court will stand in recess for twenty minutes.

\* \* \* \*

THE COURT: Okay[,] Mr. Byrd.

MR. BYRD: Your Honor, if it please the Court my position is that this Court is without jurisdiction, that we're not prepared to go forward and do not choose to go forward.

If the Court is of a mind to order us to go forward then I will take a voluntary dismissal without prejudice pursuant to Rule 41.

Defense counsel indicated a readiness to try the case, and the trial court denied the plaintiffs' motion to continue. Judge Lamm advised plaintiffs' counsel that he would give him "all the time [he] need[ed] . . . to get [his] clients back, talk to them, explain the situation, and get [his] officers back, you know, like I would do with any attorney through the trial; if something comes up, they have some scheduling problems, the Court will do anything within reason to accommodate them." After expressing his concern with the confused events of the morning, plaintiffs' counsel then stated:

MR. BYRD: I can tell the Court it's my present intent to file a voluntary dismissal without prejudice if I could have until in the

morning to inform the Court of that or to try to go forward then I would appreciate it.

The trial court then recessed until 9:30 a.m. the following morning. On the following morning, counsel for defendants appeared before Judge Lamm to ask for a clarification of the voluntary dismissal plaintiffs had filed. Counsel for defendants advised Judge Lamm that they had told plaintiffs' counsel that they intended to discuss the wording of the dismissal with the court and invited plaintiffs' counsel to be present, but that plaintiffs' counsel stated "I am through."

The document filed by plaintiffs was labeled a "conditional" voluntary dismissal without prejudice, and recited that the plaintiffs contended that Judge Lamb had no jurisdiction over the case "for this term for the reason that this matter has already been set over and continued by the Honorable Loto Caviness." Plaintiffs stated that because of the situation, they voluntarily dismissed their action against the defendants without prejudice and pursuant to the provisions of Rule 41(a) of the North Carolina Rules of Civil Procedure.

Defendants then moved that the costs be taxed against plaintiffs pursuant to Rule 41(d). On 8 March 1999, the trial court taxed costs totaling $23,431.59 against the plaintiffs, and plaintiffs appealed.

*Wade E. Byrd and Leighton W. McFarland, III, for plaintiff appellants.*

*Golding Holden Cosper Pope & Baker, L.L.P., by John G. Golding, for the defendant appellee Carolina Healthcare Systems, formerly known as The Charlotte-Mecklenburg Hospital Authority; The Willows at Amethyst, a facility of Carolina Healthcare Systems.*

*Parker, Poe, Adams & Bernstein L.L.P., by David N. Allen and Patrick J. Fogarty, for defendant appellee Dr. James E. Lee.*

HORTON, Judge.

Plaintiffs contend the trial court erred in (I) ruling that their conditional voluntary dismissal constituted a voluntary dismissal under Rule 41(a)(1) of the North Carolina Rules of Civil Procedure, (II) dismissing the action, and (III) taxing costs against plaintiffs pursuant to Rule 41(d). We disagree, and affirm the order of the trial court. Since

the assignments of error all relate to the application of Rule 41, we will consider the assignments together.

The trial court taxed costs against plaintiffs pursuant to Rule 41(d) of the North Carolina Rules of Civil Procedure, which provides in pertinent part that "[a] plaintiff who dismisses an action or claim under section (a) of this rule *shall* be taxed with the costs of the action unless the action was brought in forma pauperis." N.C. Gen. Stat. § 1A-1, Rule 41(d) (1999) (emphasis added). Plaintiffs contend that their action had not been voluntarily dismissed pursuant to Rule 41(a), so that the taxing of costs by the trial court was error. We disagree.

Plaintiffs first argue that their action had not been voluntarily dismissed because the "Conditional Voluntary Dismissal was, as a matter of law, a nullity with no effect whatsoever." In support of their proposition, plaintiffs rely on *Thompson v. Newman*, 101 N.C. App. 385, 399 S.E.2d 407 (1991), *aff'd in part, vacated in part on other grounds*, 331 N.C. 709, 417 S.E.2d 224 (1992), in which we held that a prospective oral statement of intent to dismiss a case voluntarily was not sufficient to constitute a voluntary dismissal under Rule 41(a). In *Thompson*, plaintiff's counsel stated, "we're going to take a voluntary dismissal without prejudice." The statement "[was] ambiguous in the absence of additional evidence as to whether plaintiffs' attorney was in fact taking a voluntary dismissal or was merely expressing an intention to do so." *Id.* at 389, 399 S.E.2d at 409.

Appellants also rely on the case of *Hyde Constr. Co. v. Koehring Co.*, 388 F.2d 501 (10th Cir.), *cert. denied*, 391 U.S. 905, 20 L. Ed. 2d 419 (1968). In *Hyde*, the plaintiff filed a motion in opposition to a change of venue, and also filed notice that if venue were changed, the action would be voluntarily dismissed. The trial court in *Hyde* denied plaintiff's motion and dismissed the action. The Circuit Court of Appeals reasoned that the *Hyde* plaintiff's statement amounted to a "*conditional* notice of dismissal [which] is not within the scope of Rule 41(a)(1)." *Hyde*, 388 F.2d at 507 (emphasis added).

*Thompson* and *Hyde* are clearly distinguishable from the case before us. "The crucial element in a notice of dismissal is the intention of the party actually to dismiss the case." *Robinson v. General Mills Restaurants*, 110 N.C. App. 633, 636, 430 S.E.2d 696, 698 (1993), *disc. review denied as improvidently granted*, 335 N.C. 763, 440 S.E.2d 274 (1994). In both *Thompson* and *Hyde*, the intention to enter a voluntary dismissal was *prospective* and was conditional in *Hyde*.

Here, despite the "Conditional" label plaintiffs attempted to place upon their notice of dismissal, the plaintiffs actually filed a notice of voluntary dismissal, and expressly stated in that document that the dismissal was entered pursuant to the provisions of Rule 41(a).

Plaintiffs also argue that fairness and equity require that their notice of dismissal be treated as a nullity, and the case restored to the trial calendar. Plaintiffs are understandably concerned about the trial court's decision to attempt to try their case, following an initial indication that the case would be continued. Plaintiffs further contend that Judge Lamb's decision to go forward with the case reversed, in effect, the decision of Judge Caviness to continue the matter, in violation of our well-established rule regarding the inability of a superior court judge to change the judgment of another superior court judge. *Calloway v. Motor Co.*, 281 N.C. 496, 504, 189 S.E.2d 484, 490 (1972).

Here, plaintiffs initially objected to the case being continued, stated that they had completed all necessary trial preparation, and wanted to try the matter. Although plaintiffs' counsel had released two witnesses who were police officers, and released the plaintiffs themselves, both the parties and witnesses resided in the Charlotte area and the trial court promised necessary assistance to have the witnesses appear for trial as needed. Further, there were pretrial matters to be heard and a jury to be selected before trial of the case could begin, thereby allowing additional time to secure all necessary witnesses. Finally, the trial court asked plaintiffs' counsel to contact his clients and witnesses to determine their availability, but never stated that the case was going to be tried in the absence of a necessary party or witness. Plaintiffs never reported to the trial court either an inability to return to court or an inability to have their witnesses present. Plaintiffs' motion for continuance was never renewed prior to filing their voluntary dismissal.

Plaintiffs also argue that the action by Judge Lamm reversed the order of continuance entered by Judge Caviness. However, "a judge has the power to modify an interlocutory order made by another whenever there is a showing of changed conditions which warrant such action." *Id.* at 502, 189 S.E.2d at 488. Here, there were obvious *changed circumstances* after the parties' appearance before Judge Caviness, in that the court file in this case was located and a special superior court judge became available to try this protracted matter. Under these circumstances, Judge Caviness' order of continuance could be modified.

McCRARY v. BYRD

[136 N.C. App. 487 (2000)]

We find no abuse of discretion by the trial court in failing to continue the matter, hold that the voluntary dismissal entered by the plaintiffs was sufficient to dismiss the case without prejudice pursuant to Rule 41(a), and hold that the trial court did not err in taxing costs to the plaintiffs as the provisions of Rule 41(d) required the court to do so.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.